**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GERARD KENNEY, ALEXA JOSHUA, GLEN DELA CRUZ MANALO, and KATHERINE MURRAY LEISURE, | ) ) ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| AMERICAN BOARD OF INTERNAL MEDICINE, | ) ) ) |
| | ) |
| Defendant. | ) ) |

Civil Action No. 2:18-CV-5260-RK

**MEMORANDUM OF LAW OF DEFENDANT
AMERICAN BOARD OF INTERNAL MEDICINE IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Leslie E. John (I.D. No. 62290)
john@ballardspahr.com
Jason A. Leckerman (I.D. No. 87915)
leckermanj@ballardspahr.com
Elizabeth P. Weissert (I.D. No. 322931)
weisserte@ballardspahr.com
Mansi Shah (I.D. No. 326165)
shahm@ballardspahr.com

**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: 215-665-8500

*Attorneys for Defendant,*
*American Board of Internal Medicine*

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS .................................................................................... 3

III.    LEGAL STANDARD............................................................................................ 8

IV.     ARGUMENT ........................................................................................................ 9

      A.      Plaintiffs Have Failed to State a Claim Under Either Section 1 or Section 2
            of the Sherman Act. ....................................................................................... 9

            1.      MOC and Initial Certification Are Components of a Single Product
                      – Board Certification – and, Therefore, Plaintiffs' Tying Claim
                      Fails............................................................................................... 9

            2.      Plaintiffs Fail to Allege Facts Showing That ABIM Has Engaged
                      in Any Anti-Competitive Conduct to Support Their
                      Monopolization Claims............................................................. 14

            3.      Plaintiffs Have Not Properly Pled Antitrust Injury for Many of
                      Their Claims............................................................................. 16

      B.      Plaintiffs' RICO Claim Should be Dismissed ...................................... 19

            1.      Plaintiffs Fail to Establish Standing on Their RICO Claim..................... 20

            2.      Plaintiffs Fail to State Their RICO Claim with Particularity.................. 26

      C.      Plaintiffs' Unjust Enrichment Claim Is Improper and Incomplete. ...................... 27

            1.      Unjust Enrichment Does Not Apply Because a Valid Contract
                      Exists between the Parties......................................................... 28

             2.      Plaintiffs Have Failed to Allege Facts Sufficient to Establish That
                      ABIM Has Been Unjustly Enriched. ....................................... 28

V.      CONCLUSION.................................................................................................... 31

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abraham v. Intermountain Health Care, Inc.*,
394 F. Supp. 2d 1312 (D. Utah 2005) .................................................................10

*Abraham v. Intermountain Health Care, Inc.*,
461 F.3d 1249 (10th Cir. 2006) .........................................................................19

*In re Actimmune Mktg. Litig. (Actimmune I)*,
614 F. Supp. 2d 1037 (N.D. Cal. 2009) ..............................................................22

*Allyn v. Am. Bd. of Med. Specialties, Inc.*,
No. 5:18-cv-355-Oc-30PRL, 2019 U.S. Dist. LEXIS 10404 (M.D. Fla. Jan.
23, 2019) ...............................................................................................................4

*Allyn v. Am. Bd. of Med. Specialties, Inc.*,
No. 5:18-cv-00355-JSM-PRL, 2019 U.S. Dist. LEXIS 10805 (M.D. Fla. Jan.
3, 2019) .................................................................................................4, 11, 15

*AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*,
No. 10-6087, 2011 U.S. Dist. LEXIS 83582 (E.D. Pa. July 29, 2011) ...................28

*In re Asbestos Prods. Liab. Litig. (No. VI)*,
822 F.3d 125 (3d Cir. 2016) ................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................8, 9

*Ass'n of Am. Physicians & Surgeons v. Am. Bd. of Med. Specialties*,
No. 14-cv-02705, 2017 U.S. Dist. LEXIS 205845 (N.D. Ill. Dec. 13, 2017) ...........5, 15

*In re Avandia Mktg.*,
804 F.3d 633 (3d Cir. 2015) ....................................................................20, 22, 24

*In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*,
No. 2007-MDL-1871, 2013 U.S. Dist. LEXIS 152726 (E.D. Pa. Oct. 22,
2013) ...................................................................................................................29

*Bonavita Elec. Contrr., Inc. v. Boro Developers, Inc.*,
87 F. App'x 227 (3d Cir. 2003) ..........................................................................27

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) ...........................................................................................21

*Broadcom Corp. v. Qualcomm Inc.*,
    501 F.3d 297 (3d Cir. 2007)................................................................14

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)........................................................................16

*Buyer's Corner Realty. Inc. v. N. Ky. Ass'n of Realtors*,
    410 F. Supp. 2d 574 (E.D. Ky. 2006) ................................................18

*Casey v. Diet Center, Inc.*,
    590 F. Supp. 1561 (N.D. Cal. 1984) ..................................................12

*Coleman v. Commonwealth Land Title Ins. Co.*,
    318 F.R.D. 275 (E.D. Pa. 2016).........................................................21

*Collins v. Associated Pathologists*,
    844 F.2d 473 (7th Cir. 1988) ............................................................10

*Curley v. Allstate Ins. Co.*,
    289 F. Supp. 2d 614 (E.D. Pa. 2003) ..................................................28

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005)...............................................................17

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016)..................................................................9

*Devon Drive Lionville, LP v. Parke Bancorp, Inc.*,
    No. 15-3435, 2018 U.S. Dist. LEXIS 125011 (E.D. Pa. July 26, 2018)................21

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    784 F. Supp. 2d 508 (D.N.J. 2011) ....................................................22

*EBC, Inc. v. Clark Bldg. Sys.*,
    618 F.3d 253 (3d Cir. 2010).........................................................28, 29

*Heartland Payment Sys. v. Micros Sys.*,
    No. 3:07-cv-5629-FLW, 2008 U.S. Dist. LEXIS 74972 (D.N.J. Sept. 29,
    2008) ..............................................................................................19

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
    466 U.S. 2 (1984)............................................................................10

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab.
    Litig.*,
    903 F.3d 278 (3d Cir. 2018).........................................................25, 26

*Krehl v. Baskin-Robbins Ice Cream Co.*,
   664 F.2d 1348 (9th Cir. 1982) ........................................................................11

*Larry Pitt & Assocs. v. Lundy Law, LLP*,
   No. 13-2398, 2017 U.S. Dist. LEXIS 29032 (E.D. Pa. Feb. 28, 2017) ............................22, 23

*Levitt v. Merck Sharp & Dohme Corp. (In re Vioxx Prods. Liab. Litig.)*,
   2016 U.S. Dist. LEXIS 127155, at *19 (E.D. La. Sept. 16, 2016) ...........................................5

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004).........................................................................26

*Maio v. Aetna*,
   221 F.3d 472 (3d Cir. 2000).........................................................................20, 24, 25

*Maio v. Aetna, Inc.*,
   No. 99-1969, 1999 U.S. Dist. LEXIS 15056 (E.D. Pa. Sept. 29, 1999) ................................23

*Martinelli v. Petland, Inc.*,
   No. CV-09-529-PHX-DGC, 2010 U.S. Dist. LEXIS 5965 (D. Ariz. Jan. 26,
   2010) ....................................................................................22

*Matthews v. Lancaster Gen. Hosp.*,
   87 F.3d 624 (3d Cir. 1996).........................................................................16, 17, 19

*Mazur v. Milo's Kitchen, LLC*,
   No. 12-1011, 2013 U.S. Dist. LEXIS 89126 (W.D. Pa. May 24, 2013)................................30

*McHugh v. Jackson*,
   No. 07-2970 (JBS), 2010 U.S. Dist. LEXIS 18827 (D.N.J. Mar. 2, 2010) .............................5

*Montanez v. HSBC Mortg. Corp. (USA)*,
   876 F. Supp. 2d 504 (E.D. Pa. 2012) .........................................................................28

*Mumford v. GNC Franchising LLC*,
   437 F. Supp. 2d 344 (W.D. Pa. 2006).........................................................................11

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
   838 F.3d 421 (3d Cir. 2016).........................................................................14

*Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck & Co.*,
   2013 U.S. Dist. LEXIS 61051 (D.N.J. Apr. 29, 2013) ...........................................21

*Rolo v. City Investing Co. Liquidating Trust*,
   155 F.3d 644 (3d Cir. 1998).........................................................................27

*Sanjuan v. Am. Bd. of Psychiatry & Neurology*,
   40 F.3d 247 (7th Cir. 1994) .........................................................................17

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010)...................................................................9

*Shaywitz v. Am. Bd. of Psychiatry & Neurology*,
    675 F. Supp. 2d 376 (S.D.N.Y. 2009)..................................................17

*Smith v. Mobile Oil Corp.*,
    667 F. Supp. 1314 (W.D. Mo. 1987) ....................................................11

*St. Germain v. Wisniewski*,
    No. 15-1279, 2016 U.S. Dist. LEXIS 103084 (W.D. Pa. Aug. 5, 2016)................................29

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008)..................................................27

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone Antitrust Litig.)*,
    No. 16-5073, 2017 U.S. Dist. LEXIS 145501 (E.D. Pa. Sept. 8, 2017)................................14

*SubSolutions, Inc. v. Doctor's Assocs.*,
    436 F. Supp. 2d 348 (D. Conn. 2006),............................................11, 13

*Sunshine v. Reassure Am. Life Ins. Co.*,
    515 F. App'x 140 (3d Cir. 2013) ..........................................................28

*Synthes, Inc. v. Emerge Med., Inc.*,
    No. 11-1566, 2012 U.S. Dist. LEXIS 140251 (E.D. Pa. Sept. 28, 2012)................................15

*Tatum v. Takeda Pharms. N. Am., Inc.*,
    No. 12-1114, 2012 U.S. Dist. LEXIS 151031 (E.D. Pa. Oct. 19, 2012)................................29

*In re Welding Fume Prods. Liab. Litig.*,
    No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164 (N.D. Ohio Aug. 8, 2005).....................5

*Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*,
    850 F.2d 803 (1st Cir. 1998) ................................................................10

*Wisconsin v. Indivior Inc.*,
    No. 16-5073, 2017 U.S. Dist. LEXIS 145501, at *31 (E.D. Pa. Sept. 8, 2017) .....................14

*Yeager's Fuel v. Pennsylvania Power & Light Co.*,
    953 F. Supp. 617 (E.D. Pa. 1997) ........................................................10

*Zafarana v. Pfizer, Inc.*,
    724 F. Supp. 2d 545 (E.D. Pa. 2010) ..................................................29

**State Cases**

*Wilson Area Sch. Dist. v. Skepton*,
   895 A.2d 1250 (Pa. 2006) ..........................................................................................28

**Federal Statutes**

18 U.S.C. § 1964(c) .........................................................................................................20

15 U.S.C. § 1 ..................................................................................................2, 9, 13, 16

15 U.S.C. § 2 ..................................................................................................2, 9, 14, 16

**Rules**

Federal Rule of Civil Procedure 9(b) ..............................................................3, 26, 27

Federal Rule of Civil Procedure 12(b)(6) ..................................................................1, 8

**Regulations**

28 Pa. Code §§ 158.13 (2019) ............................................................................................5

WAC § 246-853-750 (1) (a) (2019) ..................................................................................5

**Other Authorities**

First Amended Class Action Complaint, *In re Avandia Mktg., Sales Practices and
   Prod. Liab. Litig.*, MDL No. 1871 .............................................................................22

*CME That Earns MOC*, www.abim.org/maintenance-of-certification/earning-
   points/cme-that-earns-moc.aspx ...................................................................................7

*Mission*, AMERICAN BOARD OF INTERNAL MEDICINE (2019), www.abim.org
   /about/mission.aspxg...................................................................................................3

*MOC Requirements*, www.abim.org /maintenance-of-certification/moc-
   requirements/general.aspx ............................................................................................7

*Physicians Enroll in the ABIM MOC Program in Record Numbers*,
   www.abim.org/news/physicians-enroll-in-abim-moc-program-in-record-
   numbers.aspx .................................................................................................................6

*Value of MOC*, www.abim.org /maintenance-of-certification/value.aspx .....................7

Pursuant to Federal Rule of Civil Procedure 12(b)(6) defendant American Board of Internal Medicine ("ABIM") moves to dismiss plaintiffs' Amended Complaint (ECF. No. 18) with prejudice.  ABIM respectfully submits this memorandum of law in support of its Motion to Dismiss plaintiffs' Amended Complaint for failure to state a claim.

## I.   <u>INTRODUCTION</u>

ABIM is an independent, non-profit evaluation organization that offers board certification to internists.  For decades, board certification has been a hallmark of quality in internal medicine and has provided the public with important information about the qualifications of internists.  When patients facing serious health concerns consult physicians and hear that they are "board certified," those patients immediately know that those doctors meet a certain standard.  The same is true when courts are presented with testifying physicians who are board certified.  Courts routinely consider board certification when evaluating a doctor's qualifications.  In bringing this lawsuit against ABIM, plaintiffs launch a direct attack on board certification, seemingly motivated by a desire to benefit from being board certified without demonstrating that they continue to meet the standards required to maintain certification.  There is, however, no basis for their claims.  The claims they attempt to bring – a mishmash of antitrust, RICO, and state law claims – are ill-considered and should be dismissed.

Board certification is a voluntary process, and is not required to practice medicine in any state.  Many patients, healthcare institutions, and insurers rely upon certification as a tool that, along with other markers, informs them about a physician's credentials.  Given that the state-of-the-art in medical specialties evolves rapidly, all certifications ABIM has issued since 1990 have included some requirement of continuing participation in order to maintain the certification. ABIM developed its Maintenance of Certification ("MOC") program as a method for physicians to demonstrate periodically, through rigorous and scientifically supported methods, that they

have stayed current in their field.  In this regard, MOC acts as a quality control measure that ensures ABIM certification retains its high standards and allows internists to demonstrate that they are staying current in their fields.

Four internists challenge the requirement that they participate in the MOC program to maintain their ABIM certifications.  They bring this action on behalf of themselves and as a purported class action on behalf of all internists required by ABIM to participate in MOC to maintain their board certification.  Their claims are directed toward their ultimate goal of reaping the benefits of board certification without fulfilling the continuing qualification requirements of MOC (indeed, two named plaintiffs did not pass the required exam).

Plaintiffs premise their antitrust claims on a theory of unlawful tying.  They allege that board certification is two separate products – initial certification and continuing certification (MOC) – the purchase of which ABIM has tied together in violation of Section 1 of the Sherman Act.  But plaintiffs cannot establish that initial certification and MOC are two separate products capable of being tied; plaintiffs' own allegations demonstrate that initial certification and MOC comprise complementary, continuous components of ABIM's certification.  They are not separate products.  For that reason as well, plaintiffs' claims that ABIM has unlawfully created and maintained monopoly power in violation of Section 2 of the Sherman Act fails.  Because they have not met their burden of plausibly alleging the tying of two products, they cannot point to any unlawful (*i.e.*, anticompetitive) conduct.  In addition, even assuming *arguendo* that plaintiffs had properly pled the elements of these antitrust claims, their allegations fall short of properly pleading the essential requirement of antitrust injury.

Plaintiffs' other claims fare no better.  Having originally only pled antitrust claims, plaintiffs tacked onto their Amended Complaint claims that ABIM has violated RICO by

promoting MOC and that ABIM has been unjustly enriched by plaintiffs paying MOC-related fees. Here, too, plaintiffs fail to allege facts sufficient to plead these claims. Specifically, they fail to allege plausibly that ABIM's conduct was the proximate cause of any harm to plaintiffs, as required to establish standing under RICO. Because plaintiffs unquestionably received the benefits of board certification, for which they paid, including the MOC programs, they do not and cannot allege an actionable injury. Plaintiffs also fail to state their fraud-based RICO claim with particularity, in violation of Federal Rule of Civil Procedure 9(b). Their unjust enrichment claim fails for two independent reasons as well: any payment was made pursuant to a written agreement and, in any event, there was no unjust enrichment as plaintiffs have not alleged that they were deprived of any benefit for which they paid.

Despite plaintiffs' litany of allegations, they fail to state any claim under federal or state law. Patients, healthcare institutions, insurers, and others often prefer that internists be board certified. ABIM believes that board certification provides valuable information; the named plaintiffs disagree. That disagreement does not amount to a violation of any law. The Amended Complaint should be dismissed in its entirety.

## II.   <u>STATEMENT OF FACTS</u>

ABIM is a physician-led, non-profit evaluation organization focused on improving the quality of health care. Since its founding over 80 years ago, ABIM has established uniform standards for physicians specializing in internal medicine, and has offered internists in the United States the opportunity to earn board certification. Am. Compl. ¶¶ 17, 21-22. ABIM's mission is to "enhance the quality of health care by certifying internists who demonstrate the knowledge, skills, and attitudes essential for excellent patient care." *Mission*, AMERICAN BOARD OF INTERNAL MEDICINE (2019), www.abim.org /about/mission.aspxg.

An internist has the opportunity to earn ABIM certification by, among other things, meeting educational and training requirements and passing certification exams.  Am. Compl.  ¶¶ 18-22.  ABIM has expanded its certification program over the years to include twenty subspecialties – such as cardiology and gastroenterology – in which certified internists, called diplomates, can become certified in addition to their primary certification in internal medicine.  *Id.* ¶ 3.  Although board certification is a completely voluntary process, many practicing internists choose to become board certified by ABIM, although some are unable to meet the requirements of certification.  *Id.* ¶¶ 21, 23.  ABIM is one of twenty-four Member Boards that make up the American Board of Medical Specialties ("ABMS").  *Id.* ¶¶ 5, 158.  Each Member Board offers certification in its medical specialty.  *Id.*  ¶¶ 158, 160.

Board certification by ABIM is not a requirement of licensure to practice internal medicine in any state.  *Id.* ¶¶ 23, 41.  The state licensing boards determine the fitness of physicians to practice medicine.  Nor is there anything to prevent other groups from developing a competing certification program.  Indeed, plaintiffs concede that other organizations provide certification.  *Id.* ¶¶ 56-59.

ABIM certification provides valuable information to the public, including patients, healthcare institutions and insurers, as well as courts, of an internist's qualifications.  Many, but not all, healthcare institutions and insurers have made the independent decision to require that physicians be board certified.  *Id.*  ¶¶ 37-39.  In examining board certification, those third parties make independent decisions about the value of board certification.  *Allyn v. Am. Bd. of Med. Specialties, Inc.*, No. 5:18-cv-00355-JSM-PRL, 2019 U.S. Dist. LEXIS 10805, at *15 (M.D. Fla. Jan. 3, 2019), adopted by *Allyn v. Am. Bd. of Med. Specialties, Inc.*, No. 5:18-cv-355-Oc-30PRL, 2019 U.S. Dist. LEXIS 10404 (M.D. Fla. Jan. 23, 2019) (pointing out that the boards "do not

control the consequences of [hospitals'] credentialing decisions, and there is no allegation that they have yet used their influence improperly").  Even some state governments have recognized the value of board certification as a credential, requiring doctors to be board certified in order to perform certain procedures.  *See* 28 Pa. Code §§ 158.13 (2019) (requiring physicians at vital organ transplantation centers to be board certified); WAC § 246-853-750 (1) (a) (2019) (requiring pain management specialists to be board certified).

Courts also rely on board certification, commonly considering certification when determining whether or not a doctor is qualified to serve as an expert.  *See, e.g., Levitt v. Merck Sharp & Dohme Corp. (In re Vioxx Prods. Liab. Litig.)*, MDL No. 1857 SECTION L, 2016 U.S. Dist. LEXIS 127155, at *19 (E.D. La. Sept. 16, 2016) ("Dr. Schapira is a board certified clinical cardiologist and internist. … As such, Dr. Schapira is qualified to testify …."); *McHugh v. Jackson*, No. 07-2970 (JBS), 2010 U.S. Dist. LEXIS 18827, at *13 (D.N.J. Mar. 2, 2010) ("[A]s a board certified and practicing internist who has also researched the literature regarding after-effects of dialysis, Dr. Rodriguez is qualified …."); *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164, at *76 (N.D. Ohio Aug. 8, 2005) ("The assertion that Dr. Levy is not qualified to testify is easily dismissed. Dr. Levy is board-certified in both internal medicine and also occupational medicine…").

Although initially ABIM issued certifications for life, beginning in 1990, ABIM began to issue time-limited certifications.  Am. Compl. ¶ 26.  ABIM recognized that the state-of-the-art in medical specialties evolves rapidly and that participation in testing and other activities was needed for internists to demonstrate their continuing qualifications after having successfully completed training.  ABIM accordingly developed the MOC program as a continuing requirement internists must meet for board certification.  *Id.* ¶ 27; *see also Ass'n of Am.*

*Physicians & Surgeons v. Am. Bd. of Med. Specialties*, No. 14-cv-02705, 2017 U.S. Dist. LEXIS 205845, at *2-3 (N.D. Ill. Dec. 13, 2017) [hereinafter "AAPS"] (stating that ABMS and its Member Boards "came to recognize the need for periodic recertification given that the state-of-the-art in each medical specialty evolved rapidly and a physician's knowledge of a particular specialty could deteriorate over time").  Continuing certification would, over time, maintain and enhance the value of certification and the information that it provides to patients, healthcare institutions and insurers.

For all internists certified in or after 1990, board certification has been time-limited and dependent upon successful participation in MOC.  Am. Compl. ¶¶ 26-27.  Thus, all internists who obtained ABIM certification from 1990 onward were aware that MOC was a continuing requirement of certification.  Internists certified before 1990 were issued certificates without expiration dates and accordingly have been "grandfathered," meaning they are not required to participate in MOC to remain certified.  *Id.* ¶ 27.  Those physicians, who represent a declining percentage of total physicians certified by ABIM as they retire in increasing numbers, are strongly encouraged to participate in MOC, and many do so.  *See Physicians Enroll in the ABIM MOC Program in Record Numbers*, www.abim.org/news/physicians-enroll-in-abim-moc-program-in-record-numbers.aspx.

In order to maintain certification, ABIM requires diplomates, other than those grandfathered, to participate in the MOC program designed to demonstrate that those diplomates are meeting the standards inherent in ABIM certification.  Am. Compl. ¶ 27.  The components of the MOC program include (1) maintenance of a valid license to practice medicine; (2)

6

participation in educational and self-assessment activities approved by ABIM;[1] and (3) completion of a knowledge assessment examination.  *See MOC Requirements*, www.abim.org /maintenance-of-certification/moc-requirements/general.aspx.  For several years, ABIM required that diplomates pass a recertification exam every ten years.  Am. Compl. ¶ 26.  Since 2018, ABIM has offered a Knowledge Check-In exam every two years as an alternative to the recertification exam for qualified diplomates.  *Id.* ¶ 34.  ABIM has made public statements about the value of its diplomates maintaining currency in the field of internal medicine.  *Id.* ¶ 135. Peer-reviewed articles and research fully support these statements.  *See Value of MOC*, www.abim.org /maintenance-of-certification/value.aspx.

The National Board of Physicians and Surgeons ("NBPAS") also offers maintenance of certification to internists.  Am. Compl. ¶ 56.  NBPAS does not offer initial certification and physicians must obtain certification from an ABMS member board in order to be eligible to participate in NBPAS maintenance of certification.  *Id.* ¶¶ 57-58.  The NBPAS maintenance of certification program also requires that physicians hold a valid state license to practice medicine and complete at least fifty hours of Continuing Medical Education ("CME") every two years.  *Id.* Unlike ABIM, NBPAS does not require that physicians pass any exam in order to participate in maintenance of certification and remain certified by NBPAS.  *Id.*

Plaintiffs are four internists whose ABIM board certification requires that they participate in the MOC program as a component of continuing board certification.  Dr. Gerard Kenney obtained board certification in internal medicine in 1993 and a gastroenterology subspecialty

---

[1]    ABIM certified internists may obtain MOC points by completing any one of thousands of ABIM-approved Continuing Medical Education ("CME") programs, offered by a variety of providers, not solely those offered by ABIM.  Am. Compl. ¶ 54; *CME That Earns MOC*, www.abim.org/maintenance-of-certification/earning-points/cme-that-earns-moc.aspx.

certification in 1995.  *Id.* ¶ 75.  Dr. Kenney alleges he chose to forgo taking the periodic examinations required to maintain his certifications and, as a consequence, had to forgo an employment offer because the employer required him to maintain ABIM subspecialty certification.  *Id.* ¶¶ 75-79.  Dr. Alexa Joshua obtained board certification in internal medicine in 2003.  *Id.* ¶ 83.  Dr. Joshua alleges that she did not maintain ABIM certification because, despite participating in MOC, she did not pass an examination in 2014 and that, as a consequence, a hospital revoked her admitting privileges.  *Id.* ¶¶ 84-88.  Dr. Glen Dela Cruz Manalo obtained board certification in internal medicine in 1997 and a gastroenterology subspecialty certification in 2000.  *Id.* ¶ 91.  Dr. Manalo chose not to participate in the MOC program and his certification was accordingly terminated in 2007.  *Id.* ¶ 93.  Dr. Manalo alleges his employer terminated his employment because he did not maintain ABIM certification.  *Id.* ¶ 95.  Dr. Katherine Murray-Leisure obtained a lifetime board certification in 1984 and a subspecialty certification in infectious diseases in 1990.  *Id.* ¶ 104.  Dr. Murray does not complain of her lifetime board certification, but only of her subspecialty certification.  Dr. Murray alleges that she lost one year's income because she did not pass the periodic examination in 2009 and her hospital required her to maintain her ABIM subspecialty certification.  *Id.* ¶¶ 107-112.  After passing the examination in 2012, the hospital restored her privileges.  *Id.*

### III.   <u>LEGAL STANDARD</u>

ABIM moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)) (internal quotation marks omitted).  In deciding a motion to dismiss under Rule 12(b)(6), courts "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them

after construing them in the light most favorable to the nonmovant." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted).  However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678-79).  At this stage, the court should disregard "naked assertions devoid of further factual enhancement." *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (internal citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Here, plaintiffs' claims fall well short of these standards.  Plaintiffs have failed to plead sufficient facts that, if proven true, would establish a violation of the federal antitrust laws or unjust enrichment under state law. They also fail to plead facts that could establish standing to assert a claim under RICO.

## IV.   ARGUMENT

### A.    Plaintiffs Have Failed to State a Claim Under Either Section 1 or Section 2 of the Sherman Act

Plaintiffs bring claims under sections 1 and 2 of the Sherman Act, based on the central contention that ABIM has engaged in tying.  But initial certification and MOC together make up ABIM's single certification product – board certification.  In the absence of two distinct products, a tying arrangement is impossible and ABIM cannot be found to have engaged in any anticompetitive conduct.  These claims, therefore, should be dismissed.

#### 1.    MOC and Initial Certification Are Components of a Single Product – Board Certification – and, Therefore, Plaintiffs' Tying Claim Fails

In order to state a tying claim, plaintiffs must present well-pleaded factual allegations establishing: (1) MOC and initial board certification are separate products; (2) the purchase of initial board certification is conditioned on participation in MOC; (3) ABIM has sufficient

economic power in the market for initial certification to enable it to restrain trade in the market

for MOC; and (4) a substantial amount of commerce in the market for MOC is affected.  *See*

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 18 (1984).  Plaintiffs' tying claim fails

because it is based on a false premise that there are two different "tied" products.  Initial

certification and MOC are components of a single product – board certification – rather than

separate products.

The central tenets are well established.  When two items are only purchased together as a

bundle or two items are components of a single product, such as here, courts reject tying claims.

*See Collins v. Associated Pathologists*, 844 F.2d 473, 477-78 (7th Cir. 1988) ("[P]athology

services are not a separate and distinct product from hospital services, they combine in the form

of one product, not two tied products."); *Yeager's Fuel v. Pennsylvania Power & Light Co.*, 953

F. Supp. 617, 654 (E.D. Pa. 1997) (finding the single product of residential heating "[a]dmittedly

… has separate components" and stating, "[i] n the absence of a second product, a tying

arrangement cannot exist").  Courts regularly reject tying claims on this basis.  *See Wells Real

Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 805-15 (1st Cir. 1998) (rejecting

realtor's claim that a local board of realtors tied access to a special listing of homes to board

membership, expressing doubt that membership could be considered a separate product from the

rights that come with the membership, including access to the listing); *Abraham v. Intermountain

Health Care, Inc.*, 394 F. Supp. 2d 1312, 1318-20 (D. Utah 2005) (rejecting tying claims in the

health insurance context, finding that consumers are purchasing only one product – access to

health care – rather than heath care coverage and access to care by certain providers).

There is a dearth of case law discussing tying in the context of certification.  Recently,

however, in consideration of a similar claim against another ABMS board, the court expressed

skepticism of a tying theory.[2]  This is consistent with case law examining tying claims in the franchise context.  Courts considering tying claims in the franchise context routinely reject those claims, finding that products integral to the overall reputation and quality of the franchise are components of the franchise.  These integral components, although bought at separate times, are not separate products capable of being tied.  An example is *Krehl v. Baskin-Robbins Ice Cream Co.*, in which franchisees alleged the ice cream franchisor tied purchase of the ice cream to purchase of the franchise trademark.  664 F.2d 1348, 1351 (9th Cir. 1982).  The court rejected the tying claim, finding that "desirability of the trademark and the quality of the product it represents are so *inextricably interrelated* … as to preclude any finding that the trademark is a separate item for tie-in purposes."  *Id.* at 1354 (emphasis added).  Other courts have rejected similar tying claims, likewise concluding that franchises are not distinct from products central to their reputations and that the purchase of those products is a continuing requirement of owning the franchise.[3]  *See SubSolutions, Inc. v. Doctor's Assocs.*, 436 F. Supp. 2d 348, 353-55 (D. Conn. 2006) (rejecting a tying claim brought by a Subway franchisee, challenging the requirement that franchisee purchase a Subway-tailored POS-system); *Smith v. Mobile Oil Corp.*, 667 F. Supp. 1314, 1326-28 (W.D. Mo. 1987) (concluding that an oil company and its branded gasoline were not separate products capable of being tied).

---

[2]    That decision recommended dismissal of an antitrust claim against ABMS and the American Board of Dermatology ("ABD") over the creation of a new subspecialty within ABD for a procedure called "Mohs surgery."  The court held that "it is not clear from the complaint what two separate products are allegedly being tied together."  *Allyn*, 2019 U.S. Dist. LEXIS 10805, at *14.

[3]    The franchise context supports rule of reason consideration of these tying claims.  *See Mumford v. GNC Franchising LLC*, 437 F. Supp. 2d 344, 359 (W.D. Pa. 2006) ("Though … tying arrangements have been held in some cases to be per se illegal conduct … these kinds of activities in the context of franchising have not.") (internal citation omitted).

Similarly, here, plaintiffs' allegations show that MOC is a continuing requirement or qualification of board certification rather than a distinct product capable of being tied.  *See*, *e.g.*, Am. Compl. ¶ 49 ("Beginning in or about 1990, all internists purchasing initial ABIM certifications have been required to purchase MOC or have their certification terminated by ABIM.  Initial ABIM certification is required by ABIM to purchase MOC.").  Just as the franchisor in *Krehl* sought to ensure a consistent consumer experience from franchise to franchise, ABIM uses MOC as a tool for ensuring the consistent quality of ABIM board certified internists.  Board certification is the single product upon which ABIM stakes its reputation.  Central to ABIM's reputation is its ability to set standards for maintaining its own certification and ensuring that the public continues to trust that "ABIM certification" is the gold standard in distinguishing qualified internists.  The very term "Maintenance of Certification" confirms that there is a single product.  A physician is certified but then must maintain that certification by demonstrating continuing entitlement to that certification through compliance with standards set by ABIM.  The plaintiffs may disagree with those standards, but that disagreement does not make MOC a separate product.  Plaintiffs' conclusory allegations and complaints that these internists would rather not have to pass MOC examinations do not make initial certification and MOC two separate products.

Courts also find dismissal appropriate when consumer demand makes clear that the products are not separate.  In *Casey v. Diet Center, Inc.*, for example, a franchisee brought a tying claim against a franchise weight loss program alleging the franchisor tied purchase of proprietary diet tablets to purchase of the franchise.  590 F. Supp. 1561, 1562-66 (N.D. Cal. 1984).  The court rejected the tying claim, finding that the tablets and franchise made up a single product because "the [consumer] demand for the Diet Supp is not separate from that for the

franchise: it is generated wholly by the franchisee's operation of the franchise[.]" *Id.* at 1564. Likewise, in *SubSolutions, Inc. v. Doctor's Associates*, the court rejected a tying claim by a franchisee challenging as tying the requirement that the franchisee purchase a Subway POS system.  436 F. Supp. 2d at 353-55.  The court found that the POS system was a component of the franchise because there was no demand for the Subway-tailored POS systems independent of the demand for Subway franchises.  *Id.* at 355.

These holdings apply with equal force here.  From the consumer demand perspective – *i.e.*, from the perspective of an internist – MOC and initial certification are not separate products; rather, they together make up certification.  For internists, MOC is a continuing requirement of certification by ABIM.  And these plaintiffs knew that MOC was a continuing requirement of ABIM certification when they initially obtained certification.[4]  Though plaintiffs allege that some internists desire to purchase MOC from providers other than ABIM, they have not alleged that any internist would seek to purchase MOC if they had not already obtained ABIM certification.[5]  Am. Compl. ¶ 55.  Because plaintiffs cannot show that anyone other than an ABIM certified internist would want to purchase MOC, plaintiffs cannot establish an essential element of their tying claim – that initial certification and MOC are separate products.  Accordingly, plaintiffs' Section 1 claim should be dismissed.

---

[4]    In 1984, Dr. Murray obtained her board certification in internal medicine which was not limited in duration.  Am. Compl. ¶ 104.  She has no complaints about this certification or its duration.  She complains of her subspecialty certification which she obtained in 1990 and which was time limited, with the understanding of future participation in MOC.  *Id.*

[5]    In support of their tying claim, plaintiffs also allege that NBPAS, a competing provider offers an MOC product.  *Id.* ¶¶ 56-59.  But the *SubSolutions* court found "the fact that a number of other vendors wanted to sell POS-systems to Subway franchisees …is *irrelevant* to the determination of whether a Subway franchise and a POS-system are separate products."  436 F. Supp. 2d at 355 (emphasis added).

2.      **Plaintiffs Fail to Allege Facts Showing That ABIM Has Engaged in Any Anti-Competitive Conduct to Support Their Monopolization Claims**

Plaintiffs' Sherman Act Section 2 claim for creation and maintenance of a monopoly in the market for MOC also should be dismissed.  To state a claim for monopolization, plaintiffs must allege that "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 433 (3d Cir. 2016) (internal quotations omitted).  The second element requires that monopoly power "be accompanied by some anticompetitive conduct on the part of the possessor."  *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007).  Anticompetitive conduct occurs when a business "competes on some basis other than the merits."  *Wisconsin v. Indivior Inc. (In re Suboxone (Buprenorphine Hydrochloride & Naloxone Antitrust Litig.)*, No. 16-5073, 2017 U.S. Dist. LEXIS 145501, at *31 (E.D. Pa. Sept. 8, 2017) (internal quotations omitted).  Because plaintiffs do not sufficiently allege facts showing anticompetitive conduct, their Section 2 claim also fails.

The principal anti-competitive conduct plaintiffs allege is tying.[6]  Am. Compl. ¶¶ 1, 61. As discussed, *supra* section 1, plaintiffs have failed to allege facts sufficient to support a tying claim because initial certification and MOC are components of the single certification product, not capable of being tied.  Plaintiffs' remaining allegations of anticompetitive conduct are conclusory and unsupported.  *See, e.g., id.* ¶¶ 2, 5, 55, 60, 62, and 68.  The only allegation in which plaintiffs detail any supposed anticompetitive conduct avers: "ABIM has induced

---

[6]      Plaintiffs also claim ABIM's anticompetitive conduct includes "exclusive dealing" but fail to allege any supposed exclusive dealing arrangement or contract.  Am. Compl. ¶ 2. Plaintiffs plead this claim without any supporting allegations whatsoever.

hospitals and related entities, insurance companies, medical corporations, and other employers to require internists to be ABIM certified[.]" *Id.* ¶ 63.  Similarly, plaintiffs allege "[w]ith the assistance and encouragement of ABIM and/or persons affiliated with ABIM, many hospitals have adopted bylaws mandating that physicians purchase MOC." *Id.* ¶38.[7]  These conclusory allegations do not include any supporting facts and, therefore, fail.  *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 U.S. Dist. LEXIS 140251, at *52-53 (E.D. Pa. Sept. 28, 2012) ("some claims require more factual explication than others to state a plausible claim for relief …[t]his is particularly true in the context of antitrust claims which are, by their very nature more factually intensive") (internal quotations omitted).  In fact, they are utterly implausible.  Plaintiffs could provide no support for their claim that ABIM assisted, encouraged or induced these much larger and powerful institutions spread across the country to do anything.  In a recent case involving board certification, the court dismissed plaintiffs' attempted monopolization claims based on very similar allegations, pointing out that the boards "do not control the consequences of their credentialing decisions."  *Allyn*, 2019 U.S. Dist. LEXIS 10805, at *15; *see also* AAPS, at *13 (noting that plaintiff "has alleged no facts showing that ABMS has the ability to control hospitals nationwide or coerce hospitals to force physicians to participate in the MOC program.").  The same is true here.  No well-pleaded factual allegations suggest that ABIM exerts control over any healthcare institution or insurer.  All of plaintiffs' monopolization allegations simply recite unsupported legal conclusions similar to those the *Allyn* court found insufficient.

---

[7]     Plaintiffs also allege "many Blue Cross Blue Shield companies ("BCBS"), again with the assistance and encouragement of ABIM and/or persons affiliated with ABIM, require physicians to participate in MOC [.]" *Id.* ¶ 39.  The implicit contention that ABIM could somehow coerce an insurer as large as BCBS to require physicians to participate in MOC is utterly implausible and it is notable that plaintiffs provide no factual allegations to support that false contention.

### 3. Plaintiffs Have Not Properly Pled Antitrust Injury for Many of Their Claims

Even assuming that plaintiffs have properly pled a tying or monopolization claim, that claim should be significantly narrowed for lack of antitrust standing. Plaintiffs only have standing to pursue antitrust claims against ABIM to the extent that they can establish that they have suffered antitrust injury. To establish antitrust standing under Sections 1 and 2 of the Sherman Act, plaintiffs must allege that they have suffered "antitrust injury" – that is, an "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Specifically, these plaintiffs must show that the challenged anti-competitive conduct "affected the prices, quantity or quality of goods or services, not just [their] own welfare." *See Matthews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (internal quotation marks omitted). Plaintiffs have failed to meet the requirements of antitrust injury in several of their claims. First, much of the harm they allege, such as harm to plaintiffs resulting from decisions by healthcare institutions, insurers, or other medical employers (Am. Compl. ¶¶ 75-78, 84-87, 95, 107-112) or that they would not have purchased MOC at all absent ABIM's conduct (*id.* ¶ 66), does not constitute an antitrust injury. Second, plaintiffs who chose not to purchase MOC (*id.* ¶ 93) did not suffer antitrust injury and accordingly their antitrust claims must be dismissed.

#### a. Much of the "Harm" Alleged by Plaintiffs Is Not Antitrust Injury

##### i. Harm to Plaintiffs Resulting from Decisions by Healthcare Institutions or Others Is Not Antitrust Injury

Plaintiffs allege that they were injured in various ways, including termination of employment, lost wages, and loss of admitting privileges. *Id.* ¶ 84-87, 95. But allegations of harm caused by employment decisions of healthcare institutions and other medical employers do

not constitute antitrust injury, as they do not concern the prices, quantity, or quality of the goods and services affected by ABIM's alleged conduct (*i.e.*, board certification). *Matthews*, 87 F.3d at 641 ("An antitrust plaintiff must prove that challenged conduct affected the prices, quantity or quality of goods or services, not just his own welfare") (internal quotation marks omitted).

This is well settled. Courts have repeatedly rejected attempts by plaintiffs to turn claims against medical boards based on their failure to obtain or maintain certification into antitrust claims. Alleged injuries such as lost wages or job opportunities are not antitrust injuries. *See, e.g., Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 440 (2d Cir. 2005) ("the injury alleged by plaintiffs – their ability to earn higher pay – was not 'an antitrust injury.'"); *Sanjuan v. Am. Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251-52 (7th Cir. 1994) ("The claim that a practice reduces [doctors'] incomes has nothing to do with the antitrust laws … it does not even state an antitrust injury."); *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 387 (S.D.N.Y. 2009) (holding that the plaintiff who claimed that his lack of board certification resulted in lost job opportunities, wages, and earning potential pled himself out of court on his antitrust claims).

Here, plaintiffs purport to do the same. Dr. Kenney alleges he was forced to forgo an employment offer because the employer required him to maintain ABIM subspecialty certification. Am. Compl. ¶¶ 75-79. Dr. Joshua alleges her hospital revoked her admitting privileges because she did not maintain ABIM certification. *Id.* ¶¶ 84-87. Dr. Manalo alleges his employer terminated his employment because he did not maintain ABIM certification. *Id.* ¶ 95. Dr. Murray alleges that she lost one year's income because her hospital required her to maintain her ABIM subspecialty certification. *Id.* ¶¶ 107-112. None of these harms are of the type the antitrust laws were intended to prevent. They do not derive from the price, quantity, or

quality of ABIM certification.  Instead, like the injuries found to be insufficient in the other

board certification cases, they are all the result of decisions by independent third parties.[8]  If any

plaintiff was harmed by a hospital or other employer's decision to rely on ABIM certification as

an indication of quality, then that plaintiff might have a claim against their employer – but not an

antitrust claim against ABIM.[9]

### ii.      Plaintiffs' Desire Not to Participate in MOC Is Not Antitrust Injury

To the extent plaintiffs claim that they would not have participated in or purchased MOC

at all but for ABIM's conduct, this, too, does not constitute antitrust injury.  To establish antitrust

injury, plaintiffs must allege an injury to competition, not just themselves.  *See Buyer's Corner*

*Realty. Inc. v. N. Ky. Ass'n of Realtors,* 410 F. Supp. 2d 574, 579 (E.D. Ky. 2006) ("Antitrust

plaintiffs do not suffer antitrust injury merely because they are in a worse position than they

would have been had the challenged conduct not occurred.").  Plaintiffs cannot maintain an

antitrust claim by alleging they were "forced to purchase an unwanted product if, absent the tie,

[they] would not have bought it elsewhere."  *Id.* at 580 (citing *Jefferson Parish,* 466 U.S. at 16).

The reason for this is plain:  "This is because, in such a situation, no sales in the tied product

market were foreclosed on account of the tie and, thus, there has been no harm to competition."

*Id.*  Yet plaintiffs allege they were "forced" to purchase MOC.  *See e.g.,* Am Compl. ¶¶ 4, 10, 37,

65, 70, 71, 73.  Plaintiffs do not have an antitrust injury simply because they would rather not

---

[8]      Though plaintiffs allege, with no factual support that that ABIM "induced hospitals and related entities, insurance companies, medical corporations, and other employers to require internists to be ABIM-certified[,]"  they do not and cannot allege ABIM had or has any influence over these particular hospitals and employers.  Am. Compl.¶ 63.

[9]      Moreover, plaintiffs' decisions not to keep their certifications current or their failure to pass examinations required to keep their certifications is not antitrust injury.

have purchased MOC at all.  As a result, even assuming they have stated some type of antitrust claim, plaintiffs should not be permitted to proceed on a theory that they would not have paid for MOC at all.

> **b.     Plaintiffs, such as Dr. Manalo, Who Did Not Purchase MOC Have No Antitrust Injury**

Antitrust claims of plaintiffs, such as Dr. Manalo, who did not purchase MOC should be dismissed because they cannot possibly allege antitrust injury.  *Matthews*, 87 F.3d at 641.  In the context of a tying claim, it is the purchaser of the tied product who suffers antitrust injury.  *See Heartland Payment Sys. v. Micros Sys.*, No. 3:07-cv-5629-FLW, 2008 U.S. Dist. LEXIS 74972, at *38-39 (D.N.J. Sept. 29, 2008) ("As a purchaser of the tied product … [plaintiff] suffer[s] the type of harm that results from an illegal tying arrangement.") (internal quotation marks omitted).  Plaintiffs who did not purchase the tied product did not suffer antitrust injury and therefore have no standing to pursue antitrust claims.  *See Abraham v. Intermountain Health Care, Inc.,* 461 F.3d 1249, 1266 fn. 10 (10th Cir. 2006) ("As the Plaintiffs neither purchase nor provide [tied product], they lack standing to assert this claim.").

In this case, the alleged tied product is MOC.  Although plaintiffs claim they were "forced" to purchase MOC, some board certified internists, including Dr. Manalo, chose not to participate in and pay for MOC.  Am Compl. ¶ 93.  Plaintiffs who chose not to participate in the voluntary ongoing certification process and did not purchase the alleged tied product, MOC, have not suffered any antitrust injury.  The antitrust claims of Dr. Manalo and other putative plaintiffs who did not purchase MOC should be dismissed for lack of standing.

> **B.     Plaintiffs' RICO Claim Should be Dismissed**

Plaintiffs fail to allege facts to establish both elements of standing on their RICO claim— that is, they do not establish that they suffered an injury to their business or property that was

proximately caused by the conduct of ABIM.  Plaintiffs also fail to state their fraud-based RICO claim with particularity.  Accordingly that claim should be dismissed.

### 1.     Plaintiffs Fail to Establish Standing on Their RICO Claim

Despite plaintiffs' efforts to tack a RICO claim onto their complaint, plaintiffs have failed to allege facts sufficient to establish that they have standing to bring a civil RICO claim against ABIM.  Plaintiffs assert a fraud-based RICO claim, alleging that ABIM misrepresented its MOC program as benefiting physicians, patients, and the public.  Plaintiffs must show they have RICO standing by alleging that they: (1) suffered an injury to their business or property; and (2) the injury directly related to the conduct of ABIM that allegedly constituted a RICO violation.  *See* 18 U.S.C. § 1964(c); *In re Avandia Mktg.*, 804 F.3d 633, 638 (3d Cir. 2015).  They fail on both counts.  Plaintiffs also have not put forth any specific allegations that anyone, including any particular internists, healthcare institutions, or insurers, relied on ABIM's purportedly fraudulent misrepresentations to cause plaintiffs' supposed injuries.  Plaintiffs have not alleged that they suffered a concrete financial injury when they received the benefit of the MOC programming they purchased and the benefit of certification.  The failure to plead either one of the two elements requires dismissal.  *See Maio v. Aetna*, 221 F.3d 472, 501 (3d Cir. 2000) (affirming dismissal of RICO claim where appellant plaintiffs could not "establish that they suffered a cognizable injury to business or property flowing from appellees' conduct.").

### a.     Plaintiffs Fail to Allege Anyone's Reliance on ABIM's Supposed Misrepresentations Caused Them Harm

Plaintiffs fail to establish standing to assert their RICO claim when they fail to plead facts supporting their theory of causation.  To establish RICO standing, plaintiffs must allege that their purported injuries were directly related to the conduct of ABIM that allegedly constituted the RICO violation.  *In re Avandia Mktg.*, 804 F.3d at 638.  In other words, plaintiffs must show that

ABIM's alleged misrepresentations were the proximate cause of their cognizable economic injuries. *Id.* at 641 ("a RICO plaintiff must satisfy RICO's proximate causation requirements"). Plaintiffs' causation theory is built upon conjecture and speculation, rather than concrete factual allegations. Plaintiffs fail to allege that any healthcare institution or insurer even became aware of, let alone relied upon, any supposed misrepresentations by ABIM. In absence of this causal connection, healthcare institutions and insurers are independent decision makers that may have required physicians to be board certified for any number of reasons. The internists themselves are independent decision makers who chose to participate in MOC of their own accord. Plaintiffs' conclusory allegations fail to establish ABIM's conduct was the cause of any harm.

To establish causation on their RICO claims, plaintiffs must allege facts sufficient to show that their injuries were caused by reliance on ABIM's alleged misrepresentations. For fraud-based RICO claims, plaintiffs need not show that they themselves relied on the misrepresentations but plaintiffs must nevertheless show that their loss was "a foreseeable result of *someone's* reliance on the misrepresentation." *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656 (2008) (emphasis in original). "A majority of the district courts within [the Third] Circuit have concluded that 'some form of reliance on the defendant's misrepresentation is necessary to properly establish proximate cause for a RICO violation based on mail or wire fraud.'" *Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. 15-3435, 2018 U.S. Dist. LEXIS 125011, at *16 (E.D. Pa. July 26, 2018) (citing *Lynch v. Capital One Bank (USA), N.A.*, No. 12-992, 2013 U.S. Dist. LEXIS 83640, at *9 (E.D. Pa. June 14, 2013)); *see also Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275, 287 (E.D. Pa. 2016) (requiring reliance).

Courts have consistently found that RICO claims failed where plaintiffs did not allege that anyone specifically relied on any misrepresentations. *See, e.g., Plumbers & Pipefitters*

*Local 572 Health & Welfare Fund v. Merck & Co.*, 2013 U.S. Dist. LEXIS 61051, at *20 (D.N.J. Apr. 29, 2013) (causation theory was "based on pure conjecture about the actions and motivations of unidentified doctors"); *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 524-25 (D.N.J. 2011) (conclusory allegations "that physicians relied on Defendants' misrepresentations" were not "sufficient allegations of direct reliance"); *In re Actimmune Mktg. Litig. (Actimmune I)*, 614 F. Supp. 2d 1037, 1052 (N.D. Cal. 2009) ("Plaintiffs have not put forth any specific allegations that anyone--the doctors, the plaintiffs themselves, or any other third party--relied on defendants' purportedly fraudulent misrepresentations."). Conversely, the Third Circuit in *Avandia* found that plaintiffs had RICO standing where they alleged "that doctors relied on [defendant's] misrepresentations."  804 F.3d at 644-45. Plaintiffs in *Avandia* specifically alleged that the defendant's marketing campaign "targeted doctors" by employing "sales representatives who spread the Avandia message by calling on thousands of physicians throughout the country."  First Amended Class Action Complaint, *In re Avandia Mktg., Sales Practices and Prod. Liab. Litig.*, MDL No. 1871, ¶ 79 (E.D. Pa. Oct. 12, 2010). Plaintiffs here, do not, and could not plausibly, make similar allegations.

Courts dismiss RICO claims where plaintiffs have failed to allege anyone's reliance because the causal chain is too tenuous.  *See Larry Pitt & Assocs. v. Lundy Law, LLP*, No. 13-2398, 2017 U.S. Dist. LEXIS 29032, at *1 (E.D. Pa. Feb. 28, 2017); *Martinelli v. Petland, Inc.*, No. CV-09-529-PHX-DGC, 2010 U.S. Dist. LEXIS 5965, at *1 (D. Ariz. Jan. 26, 2010).  In *Martinelli*, the court found RICO causation insufficiently pled for those plaintiffs who failed to allege that they relied on any of defendant's representations in making their purchasing decisions and dismissed their RICO claims.  2010 U.S. Dist. LEXIS 5965, at *8 ("not a single Plaintiff has alleged that he or she ever visited Defendants' websites, received Defendants' written brochures,

or relied on a written health certificate or warranty.").  Similarly, in *Larry Pitt*, the court

dismissed RICO claims for lack of causation where a law firm alleged that it lost prospective

clients and income because of a competitor's misrepresentations regarding the competitor's legal

services but failed to show any prospective client relied on or even knew about those

misrepresentations.  *See* 2017 U.S. Dist. LEXIS 29032, at *19 (Plaintiff "lacks standing to bring

a RICO claim because its allegation that it lost revenue based on Lundy Law's conduct is too

tenuous to show direct injury.").

     Here, plaintiffs fail to specifically allege that any hospital, insurer, or internist relied on

any supposed misrepresentation by ABIM.  Plaintiffs' conclusory allegations regarding causation

are not supported by any factual underpinnings.  Plaintiffs do not point to a single example of a

hospital or insurer even becoming aware of ABIM's alleged misrepresentations let alone relying

upon such misrepresentations in deciding to require board certification or MOC.[10]  For example,

though plaintiffs allege that Detroit Medical Center required that physicians maintain board

certification in their specialties, the complaint does not include any allegation that Detroit

Medical Center was aware of or relied upon any statement by ABIM in making this credentialing

decision.  Am Compl. ¶ 85.  Absent such specific allegations, any connection between ABIM's

statements and hospitals and insurers requiring board certification on MOC is "pure conjecture."

     In absence of specific allegations of reliance, the causal chain required for plaintiffs'

RICO claims is broken.  Plaintiffs allege that, believing ABIM's supposed misrepresentations to

be true, unspecified hospitals, insurance companies, and other employers required physicians to

---

[10]     The supposed misrepresentations complained of by plaintiffs include subjective
         statements of quality such as "MOC makes a difference."  Courts have expressed doubt
         that subjective representations of quality and value can even serve as the basis for a
         RICO claim.  *See Maio v. Aetna, Inc.*, No. 99-1969, 1999 U.S. Dist. LEXIS 15056, at *8
         (E.D. Pa. Sept. 29, 1999).

participate in MOC, *de facto* forcing plaintiffs to purchase MOC.  *Id.* ¶¶ 6, 10, 166.  Plaintiffs do

not connect any statement by ABIM to a single hospital, insurer, or other employer or payer's

decision to require MOC.  Absent reliance, these employers are independent decision makers

whose actions break the causal chain.  If a hospital independently chooses to require board

certification or MOC and this requirement led to a plaintiff's supposed injury in paying for MOC

programs, then it is the hospitals conduct, not ABIM's that caused the injury.  Moreover,

plaintiffs themselves are independent decision makers.  Though plaintiffs protest they were, "*de

facto* forced" to purchase MOC, board certification is a voluntary process.  It was each

physician's choice to participate in MOC.  Indeed, Dr. Manalo admittedly chose not to pay for

MOC belying the allegation that plaintiffs were *de facto* forced to purchase it.  Plaintiffs'

unsupported, conclusory allegations on unspecified third party reliance fail to establish ABIM's

alleged misrepresentations were the proximate cause of any concrete economic harm to

plaintiffs. Therefore, plaintiffs lack standing to pursue this RICO claim and it should be

dismissed.

       **b.**       **Plaintiffs Suffered No Economic Loss When They Received the Benefit of the MOC Programs Purchased**

      Plaintiffs do not have standing to assert their RICO claim because they have not alleged

facts that, if proven true, would be "proof of a concrete financial loss" that RICO "requires."  *In

re Avandia Mktg.*, 804 F.3d at 638.  Specifically, they must allege an ascertainable financial or

out-of-pocket loss.  *See Maio*, 221 F.3d at 483 (requiring "proof of actual monetary loss, i.e., an

out-of-pocket loss").  Plaintiffs have alleged no such loss.  Other than Dr. Manalo, they each

purchased ABIM's MOC.[11]  No plaintiff alleges that he or she did not receive the MOC program

---

[11]     Dr. Manalo admittedly "decided not to purchase MOC."  Am. Compl. ¶ 93.  Dr. Manalo and any other putative plaintiffs who did not pay MOC-related fees did not suffer RICO injury under plaintiffs' theory of injury.  *Id.* ¶ 10 (alleging ABIM caused racketeering

for which they paid or that they did not benefit from participating in MOC and thereby maintaining board certification.  Instead, they essentially allege that they would rather not have purchased MOC.  Buyers' remorse is not a legally cognizable injury.  *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018).

The Third Circuit requires that plaintiffs allege concrete, non-speculative financial loss to establish RICO injury.  In *Maio*, the court affirmed dismissal of plaintiffs' RICO claims for a lack of injury where plaintiffs alleged that they overpaid for health care due to the defendant's misrepresentations about the quality of their healthcare plans.  221 F.3d at 485.  Plaintiffs failed to allege that the health care they received was actually worth any determinable amount less than what they paid for it.  *Id.* at 488 ("unless appellants claim that Aetna failed to provide sufficient health insurance coverage … there is no factual basis for appellants' conclusory allegation that they have been injured in their 'property'").  A recent Third Circuit ruling confirms that plaintiffs cannot establish economic injury when they received the benefit of their bargain.  In *Johnson & Johnson*, the court affirmed dismissal of a claim for economic damages based on the purchase of baby powder that increased health risks (in that case, of ovarian cancer) because the plaintiff did not suffer any adverse effects.  903 F.3d at 281.  The Third Circuit held the plaintiff lacked standing because she did not "allege facts that would permit a factfinder to determine, without relying on mere conjecture, that the plaintiff failed to receive the economic benefit of her bargain."  *Id.*  There was no allegation "that the purchase provided her with an economic benefit worth less than the economic benefit for which she bargained."  *Id.* at 290.  Plaintiffs cannot

---

injury "as a result of Plaintiffs and other internists being *de facto* forced to pay MOC-related fees" to ABIM).  Accordingly, Dr. Manalo cannot assert a RICO claim because he does not even satisfy plaintiffs' allegations.

establish injury simply by asserting they would rather not have purchased MOC when they received the benefit of participation in the program.

Plaintiffs who purchased MOC have not suffered cognizable RICO injuries because they received the benefit of the MOC programming they purchased, and they do not and cannot allege otherwise.  Plaintiffs chose to purchase MOC for their own reasons.  For example, Dr. Murray chose to participate in a subspecialty MOC program to maintain consulting staff privileges at the hospital with which she associated.  Am. Compl. ¶¶ 107-108, 111.  Plaintiffs do not allege that Dr. Murray did not benefit from participating in MOC.  To the contrary, once she passed her MOC examination, the hospital restored her staff privileges and her income increased.[12]  *Id.* ¶¶ 111-12.  Though, like the plaintiff in *Johnson & Johnson*, plaintiffs may regret having paid for MOC, their regret does not constitute an actionable economic injury because plaintiffs benefitted from the MOC programs they chose to purchase.

### 2.    Plaintiffs Fail to State Their RICO Claim with Particularity

Separate and apart from these pleading deficiencies is plaintiffs' failure to comply with the particularity requirements of Federal Rule of Civil Procedure 9(b).  Because their RICO claim sounds in fraud, the heightened pleading standard of Rule 9(b), which requires the circumstances constituting fraud to be pled with particularity, applies.  Fed. R. Civ. P. 9(b).  *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (requiring RICO claims that "rely on mail and wire fraud" to "comply with Federal Rule of Civil Procedure 9(b)").  To satisfy this standard, plaintiffs must allege "the time, place, and speaker and content of the alleged misrepresentation,"

---

[12]    Plaintiffs recognize that "Board certified doctors earn a higher salary." *Id.* ¶ 132. Though plaintiffs protest that this "money-centered justification insults the internist community[,]" they do not contest that maintaining certification through MOC economically benefits them, including by allowing them to earn a higher salary. *Id.*

or, "[p]ut another way, the who, what, when and where details of the alleged fraud are required."
*Bonavita Elec. Contrr., Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003)
(internal quotation marks omitted).  Although plaintiffs' Amended Complaint includes a handful
of purported misrepresentations, they fall far short of the heightened pleading standards of Rule
9(b) – the who, what, when and where details are utterly lacking.  *See*, *e.g.,* Am. Compl., ¶ 135
(claiming that "similar statement of facts and others to the same effect have been made by ABIM
and its agents repeatedly over the years").  These type of vague assertions are the antithesis of
particularity.  For this separate, independent reason, as well, the Court should dismiss the RICO
claims.  *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998)
(affirming dismissal of RICO claims where plaintiffs "[fail] to plead fraud with particularity with
respect to what happened to a specific plaintiff").

C.     **Plaintiffs' Unjust Enrichment Claim Is Improper and Incomplete**

Plaintiffs allege that ABIM was unjustly enriched because plaintiffs were *de facto* forced
to pay MOC-related fees.  Am. Compl. ¶¶ 173-75.  As an initial matter, plaintiffs assert an unjust
enrichment claim but fail to identify under which substantive law(s) the plaintiffs pursue this
claim.  This claim as pled deprives ABIM of adequate notice of the claims against it, and it
should be dismissed on that ground alone.  *In re Static Random Access Memory (SRAM)
Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (dismissing unjust enrichment claim
when plaintiffs failed to plead which states' laws supported their claim because "the Court
cannot assess whether the claim has been adequately plead[ed]").  Plaintiffs' claim should be
dismissed for two additional independent reasons: (1) unjust enrichment does not apply when the
relationship between the parties is founded upon a written agreement, and (2) plaintiffs received
the benefit of their bargain.

### 1. Unjust Enrichment Does Not Apply Because a Valid Contract Exists Between the Parties

In Pennsylvania, unjust enrichment does not apply when the relationship between the parties is founded upon a written agreement or express contract.[13]  This Court has consistently dismissed unjust enrichment claims where an enforceable agreement governs the relationship between the parties.  *See Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 515-16 (E.D. Pa. 2012); *AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*, No. 10-6087, 2011 U.S. Dist. LEXIS 83582, at *10-11 (E.D. Pa. July 29, 2011).  Here, plaintiffs allege that ABIM has been unjustly enriched by plaintiffs' payment of MOC program fees.  They allege that they were purportedly "forced" to pay MOC fees.  But they do not dispute the validity of agreements they entered into with ABIM when making these purchases.  Since written contracts govern the relationships between plaintiffs and ABIM, plaintiffs' unjust enrichment claim is improper and should be dismissed.

### 2. Plaintiffs Have Failed to Allege Facts Sufficient to Establish That ABIM Has Been Unjustly Enriched

Plaintiffs' claim fails for a second, independent reason.  Under Pennsylvania law, to state an unjust enrichment claim, a plaintiff must allege: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of such benefit by the defendant; and (3) acceptance and retention of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without payment to the plaintiff.[14]  *EBC, Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 273 (3d

---

[13]     *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (internal quotation omitted); *see also Sunshine v. Reassure Am. Life Ins. Co.*, 515 F. App'x 140, 145 (3d Cir. 2013); *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 620-21 (E.D. Pa. 2003) ("parties in contractual privity…are not entitled to the remedies available under a judicially-imposed quasi-contract")

[14]     "The most significant element of the doctrine is whether the enrichment of the defendant is unjust … a claimant must show that the party against whom recovery is sought either

Cir. 2010); *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, No. 2007-MDL-1871, 2013 U.S. Dist. LEXIS 152726, at *41 (E.D. Pa. Oct. 22, 2013). Plaintiffs' allegations show that they cannot prove this claim.

As an initial matter, the unjust enrichment claim of Dr. Manalo, and of any other putative plaintiff who chose not to purchase MOC, must be dismissed because they never paid any MOC-related fees. If they have not paid anything for MOC, they never conferred a benefit on ABIM. *See St. Germain v. Wisniewski*, No. 15-1279, 2016 U.S. Dist. LEXIS 103084, at *15-17 (W.D. Pa. Aug. 5, 2016) (dismissing unjust enrichment claim when plaintiff failed to show that he was responsible for any benefit conferred on the defendant).

The remaining plaintiffs have not shown that they were deprived of any benefit for which they paid, as they must under Pennsylvania law.[15] For example, in *Avandia*, the plaintiffs brought a claim for unjust enrichment, alleging that they paid for a drug with concealed health risks. 2013 U.S. Dist. LEXIS 152726, at *41-42. The court dismissed the claim, even after finding cognizable RICO injury, because the plaintiffs failed to allege that they did not receive the drugs they purchased. *Id.* Specifically, Plaintiffs did not show: "1) that Avandia injured a single one of its beneficiaries; 2) that Avandia failed to perform as advertised for its members; or

---

wrongfully secured or passively received a benefit that… would be unconscionable for her to retain." *EBC, Inc.*, 618 F.3d at 273 (internal citations omitted).

[15]  *See Avandia*, 2013 U.S. Dist. LEXIS 152726, at *42 ("Plaintiffs have received the benefit of their bargains. Accordingly, the Court finds that they have failed to state a claim for unjust enrichment under Pennsylvania Law."); *see also Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010) (finding that a claim for unjust enrichment is inappropriate when there is no showing that the defendant refuses to provide a service or good to the plaintiffs after plaintiffs provide the defendants with a benefit); *Tatum v. Takeda Pharms. N. Am., Inc.*, No. 12-1114, 2012 U.S. Dist. LEXIS 151031, at *12-13 (E.D. Pa. Oct. 19, 2012) (same).

(3) that their beneficiaries were advised to or did discard purchased Avandia medication when they learned of the risks." *Id.* [16]

Here, plaintiffs' unjust enrichment claim fails because they have not shown that they failed to receive the MOC programs they purchased.  Plaintiffs allege that they conferred a benefit on ABIM in the form of payment for MOC-related fees, but, like the plaintiffs in *Avandia*, their claim fails because they have not alleged that they were deprived of any benefit of their bargain – they received the MOC programs in exchange for their payment.  Therefore, it "cannot be said that the benefit bestowed on Defendants in the form of a profit from the sale was 'wrongfully secured.'"[17]  Because plaintiffs received the benefit of their bargains, their unjust enrichment claim should be dismissed.

---

[16]     *See also Mazur v. Milo's Kitchen, LLC*, No. 12-1011, 2013 U.S. Dist. LEXIS 89126, at *26-30 (W.D. Pa. May 24, 2013) (dismissing an unjust enrichment claim based on the plaintiff's purchase of unsafe and unhealthy food, as the plaintiff nevertheless purchased, received, and used the product).

[17]     *Mazur*, 2013 U.S. Dist. LEXIS 89126, at *28 (quoting *Tatum*, 2012 U.S. Dist. LEXIS 151031, at *5).

## V.  <u>CONCLUSION</u>

For these reasons, ABIM respectfully requests that this Court dismiss plaintiffs' amended complaint in its entirety with prejudice.

Respectfully submitted,

*/s/ Leslie John*
Leslie E. John (I.D. No. 62290)
john@ballardspahr.com
Jason A. Leckerman (I.D. No. 87915)
leckermanj@ballardspahr.com
Elizabeth P. Weissert (I.D. No. 322931)
weisserte@ballardspahr.com
Mansi Shah (I.D. No.  326165)
shahm@ballardspahr.com

**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Phone: 215-665-8500

*Attorneys for Defendant,*
*American Board of Internal Medicine*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 18, 2019, I served true and correct copies of the foregoing

Motion to Dismiss and supporting Memorandum of Law via the Court's ECF system upon the

following persons:

C. Philip Curley
Alan F. Curley
Cynthia H. Hyndman
Samuel G. Royko
ROBINSON CURLEY, P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL 60606
Telephone: 312-663-3100
Fax: 312-663-0303

Steven J. Greenfogel
Mindee J. Reuben
LITE DEPALMA GREENBERG, LLC
1835 Market Street, Suite 2700
Philadelphia, PA 19103
Telephone: 267-519-8306
Fax: 973-623-0858

Katrina Carroll
LITE DEPALMA GREENBERG, LLC
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: 312-750-1265
Fax: 312-212-5919

*Attorneys for Plaintiffs Gerard Kenney, Alexa Joshua,
Glen Dela Cruz Manalo, and Katherine Murray Leisure*

/s/ Mansi Shah
Mansi Shah
Ballard Spahr LLP